UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN J. KOTYK,

    Plaintiff,                              CIVIL ACTION NO. 09-14604

    v.                                   DISTRICT JUDGE ARTHUR J. TARNOW

FORD MOTOR COMPANY,         MAGISTRATE JUDGE MARK A. RANDON

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON
CROSS MOTIONS FOR SUMMARY JUDGMENT**

Before the Court are Plaintiff Stephen J. Kotyk's (Plaintiff) motion for summary judgment (Dkt. No. 22) and Defendant Ford Motor Company's (Defendant) motion to affirm the administrative decision (Dkt. No. 23). Plaintiff, an Employee Retirement Income Security Act ("ERISA") plan participant, brought this action challenging Defendant's denial of Plaintiff's claim for continued disability benefits beyond December 4, 2006 (Dkt. 1).[1] On September 22, 2010, Judge Arthur J. Tarnow referred the above-referenced motions to Magistrate Judge Mona K. Majzoub (Dkt. Nos. 24, 25). On February 9, 2011, Magistrate Judge Majzoub recused herself from this case and this matter was reassigned to the undersigned (Dkt. No. 32).

The undersigned has reviewed the record and held oral argument on April 14, 2011. For the reasons that follow, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be

---

[1] As discussed in greater detail below, Plaintiff was awarded a period of disability benefits by Defendant; Defendant then found that Plaintiff ceased being disabled and could return to work after December 4, 2006.

**DENIED**, Defendant's motion to affirm the administrative decision be **GRANTED**, and the case be **DISMISSED WITH PREJUDICE**.

## I. BACKGROUND

Plaintiff started working for Ford in 1991 as a salaried employee. (*See* Kotyk Administration Record at AR0214, hereinafter cited as "AR __"). Plaintiff first took medical leave in March 2002, due to a back injury. *Id.* at AR0198-99. Plaintiff went on leave again in late 2004. *Id.* at AR0188. Plaintiff's second leave lasted through early 2005. *Id.* at AR0174-5, 0181-2.

On March 15, 2006, Plaintiff went on his third and last disability leave for lower back pain. *Id.* at AR0214-55. While on leave, Plaintiff received short term disability benefits under the Ford Salaried Disability Plan ("SDP" or "Plan"). *Id.* As the claims processor for the Plan, UniCare processed and administered Plaintiff's claim for benefits under Section 4.02 of the Plan. *Id.* at AR0214-0255, 0263, 0267. To make a claim for disability benefits under the Plan, an employee is required to "file a Disability claim by calling the Claims Processor [UniCare] … The Employee must report their physicians' full name, telephone number and any other pertinent information when the Employee contacts the Claims Processor." *Id.* at AR0267. The "[b]enefits will begin once the [employee] is deemed Disabled and may continue for the time set forth in the applicable section [of the Plan]." *Id.*

The duration and renewal of Plan benefits are subject to several conditions, including provision of medical certification of the claimed condition and "examination by a physician designated by the Plan Administrator and/or the Claim Processor for the purpose of determining whether to continue payment of Disability Benefits." *Id.* at AR0269. The results of the independent medical examination are "final and binding on the Company, the Participant and the Claims

Processor." *Id.* An employee's failure to appear for an independent medical examination ("IME") will result in a suspension of benefits. *Id.*

On May 4, 2006, Plaintiff underwent surgery for an L4-L5 posterior spinal fusion to address his back pain. *Id.* at AR0006-13. The operation was performed at the University of Michigan Medical center by a Dr. Graziano. *Id.* The goal of the operation was to end Plaintiff's need to wear a brace and begin physical therapy. *Id.* at AR0012. Dr. Graziano anticipated that Plaintiff would be disabled through November 13, 2006. *Id.*

In September 2006, UniCare requested and Plaintiff submitted to an orthopedic independent medical examination ("IME") with orthopedic surgeon, Norman L. Pollack, M.D. *Id.* at AR0037. During his examination of Plaintiff on September 18, 2006, Dr. Pollack noted that Plaintiff had "more complaints postoperatively than he did preoperatively." *Id.* at AR0019. Additionally, Plaintiff had "sensory deficits bilaterally and [did] not appear to move very comfortably." *Id.* Plaintiff also brought "various medical records" to the examination, which Dr. Pollack reviewed. *Id.* at AR0017. Based upon his clinical assessment and examination of Plaintiff, as well as his review of Plaintiff's medical records, Dr. Pollack found Plaintiff disabled for eight weeks. *Id.* at AR0019, 0024. As a result, Plaintiff remained on disability leave and continued to receive short-term disability benefits for an additional eight weeks. *Id.* at AR0214-5.

After eight weeks elapsed, UniCare again requested, and Plaintiff submitted to an IME with Dr. Pollack. *Id.* at AR0033. The IME was scheduled for December 4, 2006. *Id.* Plaintiff again brought medical records for Dr. Pollack's review in conjunction with his examination of Plaintiff. *Id.* The medical documentation submitted by Plaintiff included "records of 11/10/06 and a follow-up letter on 11/16/06 from Dr. Graziano." *Id.* at AR0034. Dr. Graziano's November 10, 2006 records

indicated that Plaintiff's "fusion has healed well without any complications." *Id.* The records also made "a reference to no motor deficits." *Id.* Additionally, Dr. Graziano's November 16, 2006 "follow-up letter" stated "[r]adiographic images demonstrate a well-healed fusion with no signs of loosening." *Id.* However, he noted in the letter that "due to Mr. Kotyk's continued pain, he remains disabled[.]" *Id.*

During his physical examination of Plaintiff, Dr. Pollack observed that Plaintiff's "stance appeared initially normal." *Id.* His gait was "likewise normal with the exemption of no arm swing." *Id.* Additionally, Plaintiff stood "on toes and heels without apparent difficulty [and] was able to perform a full squat and normal return." *Id.* at ASR0034-5. However, as the examination progressed, Plaintiff "stood holding the examining table and unweighting his right lower limb." *Id.* at AR0034. Dr. Pollack was surprised to note that "downward pressure on both shoulders elicited a complaint of right posterior thigh pain" from Plaintiff. *Id.* at AR0035. Dr. Pollack further noted that when performing sensory testing with a pin stimulator, "sensation was normal throughout the lower left limb [and] on the lower right limb, there was initial decreased sensation in a stocking glove pattern below the right knee." *Id.* However, when Dr. Pollack performed the same test a second time on Plaintiff's right lower limb, "there was increased sensation below the knee." *Id.*

Due to the "inconsistent" findings during Plaintiff's IME, which Dr. Pollack found to be "unrealistic … as well as non-anatomical in relation to the sensory examination," Dr. Pollack was "unable to determine an extent of pathology that would lead to disability." *Id.* at AR0036. Therefore, Dr. Pollack "felt that [Plaintiff could] return to his previous job duties without specific restrictions." *Id.* at AR0036, 0041-2.

Based upon the findings in Dr. Pollack's second IME report, UniCare determined that Plaintiff was not "disabled," was no longer eligible for benefits and could return to work. *Id.* at AR0045, 0169. UniCare contacted Plaintiff via letter dated December 5, 2006, advised him of the IME findings, and directed him to report to his Plant's medical department the following day. *Id.* at AR0045. Plaintiff did not return to work or report to his Plant's medical department as directed.

Eight days after his second IME with Dr. Pollack, Plaintiff was notified by Fidelity, the claims processor for Ford's General Retirement Plan ("GRP"), that his application for disability retirement was approved effective November 1, 2006. *Id.* at AR0099-0100. Ford's GRP, the Plan under which Plaintiff was granted a "disability retirement," is governed by a Retirement Board that is separate and distinct from the Committee which administers Ford's SDP and determines "disability" benefit eligibility. *Id.* at AR0135-6. Moreover, the information provided to the Board governing the GRP, is not forwarded to the SDP. Likewise, information submitted to the SDP, is not forwarded to the GRP. *Id.* The members of the SDP Committee and GRP Board do not overlap, nor do they discuss their respective claims. Nevertheless, based upon the granting of his application for disability retirement benefits, Plaintiff appealed UniCare's denial of his claim for short term disability benefits. *Id.* at AR0051-2.

The first level of Plaintiff's appeal was addressed by UniCare. *Id.* at AR0051, 0053, 0278-9. Pursuant to the Plan, UniCare reviewed Plaintiff's claim, giving no deference to its earlier decision to discontinue Plaintiff's disability benefits. *Id.* at AR0278. After reviewing Plaintiff's appeal as well as his relevant medical documentation, UniCare affirmed its decision to discontinue Plaintiff's disability benefits. *Id.* at AR0066-67. In the letter advising Plaintiff of its decision, UniCare explained that Plaintiff "was scheduled and examined on December 4, 2006 by Dr. Pollack … and

was found able to perform the duties of his occupation and benefits were terminated." *Id.* at AR0066. UniCare further explained that "although [Plaintiff] was approved through Ford Motor Company's Retirement Plan for a Disability Retirement … [that decision did] not change the decision made by the Salaried Disability Plan." *Id.* UniCare concluded its letter by advising Plaintiff that pursuant to the SDP, he could further appeal UniCare's decision to the Salaried Disability Plan Committee. *Id.* at AR0067.

Plaintiff appealed UniCare's decision to the Salaried Disability Plan Committee in May 2007. *Id.* at AR0070-90. In his appeal to the Committee, Plaintiff argued that: (1) Ford granted his disability retirement application as of December 12, 2006; (2) Plaintiff's treating physician submitted a "Request For Leave Of Absence" form dated November 10, 2006 which indicated that Plaintiff could not return to work; and (3) an EMG performed in December 2006 and two reports from another physician, "reflected that [Plaintiff was] in need of additional surgery." *Id.* Accordingly, Plaintiff claimed that UniCare's decision to discontinue his short term disability benefits was in error. *Id.*

Upon receipt and review of Plaintiff's appeal, the Plan Committee advised Plaintiff to submit any and all additional documentation in support of his appeal. *Id.* at AR0120. The Committee forwarded Plaintiff's appeal and additional medical documentation to its physician advisor, Dr. William Heckman, for his review and analysis of Plaintiff's appeal. *Id.* at AR0121-5, 0127. Dr. Heckman reviewed Plaintiff's appeal and documentation to determine whether his disability benefits were properly discontinued under the Plan. *Id.*

During his review, Dr. Heckman analyzed the applicable Plan language, which is found in Sections 2.09 and 3 of the Plan, as well as the medical records of Drs. Smuck, Graziano, Pollack,

Barker and Bauer. *Id.* at AR0121-4. While reviewing Plaintiff's medical records, Dr. Heckman noted that there were "references to an MRI scan performed in January of 2007 and a nerve conduction study performed in December 2006 after the last UniCare IME." *Id.* at AR0127. As those documents were not included with the materials he was reviewing, Dr. Heckman requested that the Committee provide him with copies to review. *Id.* The Committee requested the documents from Plaintiff's counsel and received same on July 20, 2007. *Id.* at AR0128-30. The Committee forwarded the additional documentation to Dr. Heckman for his review. *Id.* at AR0131-2.

At the conclusion of his review, Dr. Heckman determined that there "were some inconsistencies in the findings of Dr. Pollack on December 4, 2006. However, Dr. Pollack did not have knowledge that additional diagnostic testing was to be performed on [Plaintiff]." *Id.* at AR0132. Dr. Heckman reviewed the "additional diagnostic testing" that was not provided to Dr. Pollack by Plaintiff, and found that "[t]he MRI of 1/26/07 did not show any evidence of new acute changes that would result in an ongoing period of total disability." *Id.* Therefore, Dr. Heckman concluded "within a reasonable degree of medical certainty" that there was no "objective medical evidence of total disability extending beyond 12/3/06." *Id.* Dr. Heckman submitted his findings in a report to the Plan Committee. *Id.* at AR0131-2.

After reviewing Plaintiff's claim, the December 2006 IME report, Plaintiff's medical records, Dr. Heckman's report and the relevant SDP language, the Plan Committee upheld the denial of Plaintiff's claim for disability benefits beyond December 5, 2006. *Id.* at AR0134-7. On August 24, 2007, the Committee mailed Plaintiff a letter advising of its decision to affirm UniCare's discontinuance of his short term disability benefits. *Id.* at AR0135-6. In the letter, the Committee explained that all documents submitted by Plaintiff were reviewed. However, the Committee's

physician advisor "noted that the [January 26, 2007] MRI did not support Dr. Barker's conclusion that [Plaintiff] was totally and permanently disabled." *Id.* at AR0135. In the letter, the Committee also "acknowledge[d] that [Plaintiff] was approved for Disability Retirement." *Id.* at AR0136. However, the Committee went on to explain that its "scope of authority is limited to the disability program and evaluation of the facts that apply to Plaintiff's claim" for disability benefits under the SDP, only. *Id.* Further, "the plan provisions that govern the retirement plan are not the same as those defined in the Salary Disability Plan. As a result, the decisions made by the Retirement Board cannot be considered in conjunction with [the] Salary Disability Plan." *Id.* In other words, the approval of Plaintiff's application for disability retirement was not a factor and had no impact upon his claim for continued short term disability benefits under the SDP. *Id.*

At the end of its letter, the Committee advised Plaintiff that if he wanted "further consideration"of his appeal, he was required to provide "information from his physician that identifies the objective medical evidence that was relied upon to determine that he is totally disabled for the time period of December 5, 2006 through present." *Id.* at AR0136. In response, Plaintiff submitted an "Industrial Rehabilitation Functional Capacity Evaluation" ("FCE") performed on October 1, 2007. *Id.* at AR0138-52. The FCE was forwarded to Dr. Heckman for his review. *Id.* at AR0154. In concluding that the FCE did not alter his findings regarding Plaintiff's ineligibility for benefits beyond December 5, 2006, Dr. Heckman noted that the FCE "is designed to measure [Plaintiff's] ability at the current time and does not necessarily reflect the status in December of 2006." *Id.* Thus, the FCE did not "accurately reflect [Plaintiff's] status as of December 2006 and [did] not provide proof of continuous total disability." *Id.* at AR0256.

After reviewing the relevant Plan language and Dr. Heckman's findings, the Committee decided that Plaintiff's claim for disability benefits after December 5, 2006 was appropriately denied. *Id.* at AR0156. Plaintiff was advised of the Committee's decision via letter dated January 10, 2008. *Id.* at AR0256-7. Plaintiff subsequently commenced the present action.

Plaintiff presents additional evidence in this case, which he claims shows that Defendant acted arbitrarily and capriciously in denying his disability claim. Plaintiff relies primarily on a Social Security Administration ("SSA") Determination letter (Dkt. No. 22; Ex. 1), awarding Plaintiff Social Security disability benefits. The SSA letter is dated June 25, 2009 – over a year and six months after the Committee's final benefits decision. *ld.* at AR0256-7. In fact, the record reveals that the only information provided by Plaintiff to the Committee regarding SSA benefits, was related to the **denial** of his application for Social Security disability benefits in November 2006. *Id.* at AR0227, 0231, 0299. Plaintiff did not provide further information regarding an appeal or request for a rehearing regarding his denial of Social Security benefits. *Id.* Plaintiff also submits various "FMC Clinic Visit Summary Reports" (Dkt. No. 22; Exs. 3A-3I) which document Plaintiff's complaints of back pain. However, it does not appear that these documents were submitted by Plaintiff to the Committee either, as they are not part of the Administrative Record.

## II. STANDARD OF REVIEW

A district court reviews an ERISA plan administrator's denial of benefits *de novo*, unless the plan gives the administrator discretionary authority to determine eligibility for benefits. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009). If the plan gives the administrator discretionary authority, the Court applies the highly deferential "arbitrary and capricious" standard of review. *Cox*, 585 F.3d at 299. "The

arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Schwalm v. Guardian Life Ins. Co. of America*, 626 F.3d 299, 308 (6th Cir. 2010) (quoting *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003)). Moreover, even when a claimant has introduced evidence that might be sufficient to support a finding of disability, if there is a reasonable explanation for the administrator's decision denying benefits because of the plan's provisions, then the decision is neither arbitrary nor capricious. *Id.* (citing *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000)). Accordingly, a court must uphold the administrator's decision if it is the result of a deliberate, principled reasoning process and is supported by substantial evidence. *Id.* (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)).

The relevant Plan language granting discretion in the Committee to interpret the language of the Plan – and determine eligibility for disability benefits – is as follows:

> The Committee shall have discretionary authority to administer the benefit structure of the Plan, and to this end may construe the Plan, and may correct any defect or supply any omission or reconcile any inconsistency in such manner and to such extent as it shall deem expedient to carry out the purpose of the Plan.
>  …
>
> Benefits under this Plan will be paid only if the Committee decides in its discretion that the claimant is entitled to them. Any action of the Committee (within the scope of its function) shall be final and conclusive upon any Participant and upon every other person entitled to or claiming Benefits under the Plan, subject only to the arbitrary and capricious standard of judicial review.

AR0277.

Accordingly, the Committee's decision regarding Plaintiff's disability benefits is discretionary and this Court should review the Committee's administrative decision applying the arbitrary and capricious standard of review.

### III. ANALYSIS

The ultimate question in any disability case on "arbitrary and capricious" review "is whether the plan can offer a reasoned explanation, based on the evidence, for its judgment that a claimant was not 'disabled' within the plan's terms." *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 618 (6th Cir. 2006). Here, Defendant relies on examinations and opinions of Dr. Pollack and the review of medical records and opinion by Dr. Heckman in discontinuing Plaintiff's disability benefits. Plaintiff avers that these doctors are nothing more than "hired guns" and that the opinions of Drs. Pollack and Heckman should not be given any weight.

Courts have recognized that consulting physicians who are repeatedly retained by benefits plans "may have an incentive to make a finding of 'not disabled' in order to save their employers money and to preserve their own consulting arrangements." *Elliott v. Metro. Life Ins.*, 473 F.3d 613, 620 (6th Cir. 2006) (internal quotations marks and citations omitted). However, the Supreme Court has explained that a claimant's treating physician may also have an incentive to make a finding of "disabled." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003). In *Black & Decker*, the Court considered these dueling motivations before ultimately refusing to read into ERISA cases a "treating physician rule," which would require a plan administrator to accord a patient's treating physician's opinion special deference. *Id.* at 831–32. Relatedly, the Sixth Circuit has said that in order to support an allegation of plan-chosen reviewer bias, a party must provide statistical evidence that the reviewer consistently opined that claimants were not disabled. *See Kalish v. Liberty*

*Mutual/Liberty Life Assur. Co. of Boston*, 419 F.3d 501, 508 (6th Cir. 2005). Plaintiff has not presented any statistical evidence that Drs. Pollack and Heckman consistently opined that claimants were not disabled. In the absence of such evidence, the undersigned is simply unable to conclude that Defendant acted arbitrarily and capriciously in deciding to rely upon the opinions of Drs. Pollack and Heckman in denying Plaintiff's claim for continued disability benefits.

Furthermore, it is clear that "[a] court may consider only that evidence presented to the plan administrator at the time he or she determined the employee's eligibility in accordance with the plan's terms. The court's review is thus limited to the administrative record." *Schwalm v. Guardian Life Ins. Co. of America*, 626 F.3d 299, 309 (6th Cir. 2010); *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618-19 (6th Cir. 1998) (Gilman, J., concurring); *Killian v. Healthsource Provident Administrators, Inc.*, 152 F.3d 514, 522 (6th Cir. 1998) ("There can be no dispute that in this circuit, in an ERISA claim contesting a denial of benefits, the district court is strictly limited to a consideration of the information actually considered by the administrator.") "The only exception to the ... principle of not receiving new evidence at the district court level arises when consideration of that evidence is necessary to resolve an ERISA claimant's procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Wilkins*, 150 F.3d at 618.

As such, the undersigned finds that the Court cannot consider Plaintiff's proffered documents (Dkt. No. 22; Exhibits 1 and 3-A - 3-I) in its review because they are not in the administrative record. The *Wilkins* exception does not apply here because Plaintiff presented virtually no evidence of procedural violations. Plaintiff's Complaint (Dkt. No. 1) does not allege a lack of due process, administrator bias, or any other procedural deficiency, such as a failure to follow plan notice

provisions. Nor does Plaintiff directly challenge the process Defendant used to obtain his medical records. *See Moore v. LaFayette Life Insurance Co.*, 458 F.3d 416, 430 (6th Cir. 2006). Notably, Plaintiff never filed a motion to supplement the administrative record with the proffered documents. Instead, he spreads his request to have the Court consider these documents throughout motion briefs. In the context of those briefs, it becomes clear that Plaintiff seeks to include these documents as further medical evidence of his disability claim. As such, they are substantive in nature and do not fall within the narrow *Wilkins* exception.

Finally, Plaintiff's argument that the Committee acted arbitrarily and capriciously rests heavily on a favorable determination from the SSA, awarding him disability benefits. Although the fact that an individual was awarded Social Security benefits can be relevant in determining whether an administrator's decision denying benefits was arbitrary and capricious, it does not mean that an individual is automatically entitled to benefits under an ERISA plan as the plan's disability criteria may differ from the SSA's. *See Whitaker v. Hartford Life & Accident Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005). More specifically, SSA determinations follow a highly deferential "treating physician rule" that does not apply in ERISA cases. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832-33 (2003). Furthermore, in the instant case, the SSA's decision to award benefits to Plaintiff was issued over a year and a half after Defendant issued its final determination. Accordingly, this evidence was not presented during Defendant's administration of Plaintiff's claim and should not be considered by the Court. *See Cook v. Hartford Life and Acc. Ins. Co.*, Case No. 10-cv-11809, 2011 WL 722018 *4 (E.D. Mich., Feb. 23, 2011).

In sum, Plaintiff has not demonstrated that Defendant's decision to discontinue his disability benefits was arbitrary or capricious.

## IV. CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Defendant's motion to affirm the administrative decision be **GRANTED**, Plaintiff's motion for summary judgment be **DENIED**, and the case be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: June 8, 2011

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, June 8, 2011, electronically and by first class mail.*

*s/Melody R. Miles*
*Case Manager to Magistrate Judge Mark A. Randon*
*(313) 234-5542*