UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| Stephen J. Kotyk, | Case No. 09-14604 |
| Plaintiff, | Honorable Arthur J. Tarnow<br>Senior United States District Judge |
| v | |
| Ford Motor Company, | Honorable Mark A. Randon<br>United States Magistrate Judge |
| Defendant. | |
| _____/ | |

**ORDER ADOPTING IN PART AND REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [34], DENYING DEFENDANT'S MOTION TO AFFIRM ADMINISTRATIVE DECISION IN ERISA-GOVERNED ACTION [23], GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [22], AND REMANDING MATTER TO PLAN ADMINISTRATOR WITH INSTRUCTIONS TO AWARD BENEFITS**

Based on Plaintiff Stephen Kotyk's application for disability benefits, he was deemed "disabled" since March 14, 2006 under the Social Security Act.  *See* Plaintiff's Objection, Exhibit 1.  Defendant Ford Motor Company's General Retirement Plan Committee approved Plaintiff's disability retirement application and began paying Plaintiff monthly pension benefits effective November 1, 2006.  Administrative Record (hereinafter "AR") 99-100.

The question this Court now must address in the instant complaint is whether Plaintiff is "disabled" and eligible for benefits under Defendant's Salaried Disability Plan subsequent to December 4, 2006.[1]

---

[1] The parties do not dispute any provision of the Salaried Disability Plan other than the issue of whether Plaintiff is "disabled" under the terms of the Plan.  None of the benefits denial letters Plaintiff received indicate or even suggest that any other provision of the Plan has not been satisfied.  *See* AR 45 ("Based on this Independent Medical Examination, you have been found able to perform the duties of your occupation.  Therefore, your benefits have been terminated effective 12/5/06"); *see also* AR 66 ("Mr. Kotyk... was found able to perform the

1

Now before the Court is the Magistrate Judge's Report and Recommendation (hereinafter "R&R") [34], dated June 8, 2011, recommending that Plaintiff's Motion for Summary Judgment [22] be denied and that Defendant's Motion to Affirm Administrative Decision in ERISA-Governed Action [23] be granted.

On June 22, 2011, Plaintiff filed objections [35] to the R&R. Defendant filed a response [39] on July 6, 2011.

**I. Standard of Review**

This Court reviews objections to a Magistrate Judge's R&R *de novo*. *See* 28 U.S.C. §636(b)(1)(C).

**II. Discussion**

Upon review of the record, the Court makes the following findings:

As the Magistrate Judge correctly determined, the denial of disability benefits here is not reviewed *de novo* but rather under the "arbitrary and capricious" standard since the "plan grants the administrator discretionary authority to interpret the terms of the plan and to determine benefits." *Elliott v. Metropolitan Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006); *see also* R&R at 10-11. The Court also agrees with the Magistrate Judge that its review is limited to the administrative record,[2] that the opinions of treating physicians are not entitled to special weight, and that an award of Social Security benefits does not automatically entitle an individual to benefits under an ERISA plan since the plan's criteria for benefits may differ from those of the Social Security Administration. *See* R&R at 11-13. Thus, the Court adopts these conclusions of

---

duties of his occupation and benefits were terminated on December 5, 2006"); AR 136-136, 256-257. The parties briefing also does not address any other provision of the Plan.

[2] Thus, the Magistrate properly concluded that Exhibits 1 and 3-A through 3-I (attached to Docket Nos. 22 and 35) cannot be considered in the Court's review of the denial of benefits.

the Magistrate Judge.

However, with the above guidelines in mind, the Magistrate Judge concludes that Defendant's denial of benefits was not arbitrary and capricious. This Court disagrees and rejects the Report and Recommendation in this regard.

In conducting its review under the "arbitrary and capricious" standard, the Court is guided by prior case law. The Sixth Circuit has found that while the "standard is deferential, it is not a rubber stamp for the administrator's determination. In other words, deferential review is not *no* review. Under that standard, we will uphold the administrator's decision if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Elliott*, 473 F.3d at 617 (citations and internal quotation marks omitted). "We determine whether an explanation is reasoned solely by reference to the administrative record; we ask whether, in light of the administrative record as a whole, the explanation for the decision to deny or terminate benefits is rational." *Moon v. Unum Provident Corp.*, 450 F.3d 373, 381 (6th Cir. 2005).

Furthermore, "'Before concluding that a decision was arbitrary and capricious, a court must be confident that the decisionmaker overlooked something important or seriously erred in appreciating the significance of evidence.'" *Esclavada v. Metro. Life Ins. Co.*, 2005 U.S. Dist. LEXIS 25002 at *18 (E.D. Mich. 2005) (quoting *Marchetti v. Sun Life Assurance Co. of Canada*, 30 F. Supp.2d 1001, 1008 (M.D. Tenn 1998)).

Finally, a plan administrator's "selective review" of the administrative record is improper. *Moon*, 450 F.3d at 381-382 (holding that termination of benefits was arbitrary and capricious based in part on "selective review of the administrative record"); *see also Metropolitan Life Ins. Co. v. Conger*, 574 F.3d 258, 265 (6th Cir. 2007) ("Our previous decisions make clear that an administrator abuses its discretion... when it engages in a 'selective

3

review of the administrative record' to justify a decision to terminate coverage") (quoting *Moon*, 450 F.3d at 381); *Spina v. CVS Long Term Disability*, 2011 U.S. Dist. LEXIS 26311 at *33-34 (S.D. Ohio 2011) (plan administrator's "selective quotation of... [doctor's] single comment, taken out of context, was arbitrary and capricious" and "selective reliance on comments by [doctors]... suggests 'cherry-picking' the medical record to support denying Plaintiff's claim. This was also arbitrary and capricious"); *Esclavada v. Metropolitan Life Ins. Co.*, 2005 U.S. Dist. LEXIS 25002 at *29 (court finds denial of benefits arbitrary and capricious based in part on plan administrator's reliance on the views of physician consultants who "overlooked material portions of [the] record").

Based on a review of the entire administrative record, the Court finds that Defendant selectively relied on portions of the record and failed to provide an adequate explanation for its denial of disability benefits subsequent to December 4, 2006.

In denying Plaintiff benefits, Defendant relied on the opinion of Dr. Norman L. Pollak, who conducted an independent medical evaluation of Plaintiff. AR 33-37,45. Plaintiff was initially deemed "totally disabled" from March 15, 2006 through November 13, 2006 by Dr. Mark Graziano, who performed surgery on Plaintiff. AR 12; *see also* Defendant's Motion at 2. Subsequently, Dr. Pollak examined Plaintiff on September 18, 2006 and concluded, "It is not felt that Mr. Kotyk is able to return to his described job duties at this time and based on his progress, *I would not wish to venture a prognosis* as to exactly when he will be able to return to work." AR 19 (emphasis added). Nonetheless, Dr. Pollak *then offered* a prognosis as to when Plaintiff would be able to return to work, finding, "It is my opinion that he is not able to return for work for eight weeks." *Id.*

On November 10, 2006, Dr. Graziano was asked "[h]ow long the injury prevented... [Kotyk] from working[]" and answered, "3/14/06 thru *indefinite*." AR 72-73 (emphasis added).

4

On November 16, 2006, Dr. Graziano wrote in a letter that Dr. Pollak acknowledged receiving that "Mr. Kotyk was diagnosed with L4-L5 degenerative joint disease and due to this condition underwent L4-L5 posterior spinal fusion on May 4, 2006." AR 31, 34. Dr. Graziano concluded, "Due to Mr. Kotyk's continued pain, he remains disabled and cannot return to his occupation of Product Test Technician." AR 31. Dr. Graziano did not place a limit on the length of Plaintiff's disability.

However, after Dr. Pollak performed another examination on December 4, 2006, he concluded in a letter dated that same day that Plaintiff could "return to his previous job duties without specific restrictions." AR 36. After Plaintiff appealed the denial of benefits, Defendant had a physician advisor, Dr. William Heckman, review Plaintiff's claims and consider additional evidence Plaintiff submitted. AR 131-132. Dr. Heckman concluded:

> In summary, it appears that there were some inconsistencies in the findings of Dr. Pollack on December 4, 2006. However, Dr. Pollack did not have knowledge that additional diagnostic testing was to be performed on Mr. Kotyk. A review of this additional information showed Dr. Barker's nerve conduction study demonstrated evidence of a chronic L5 radiculopathy. The official interpretation of the MRI of January 2007 did not support Dr. Bradford's review of the study. The MRI of 1/26/07 did not show any evidence of new acute changes that would result in an ongoing period of total disability. Based on the available evidence, and within a reasonable degree of medical certainty, I do not believe that there was objective medical evidence of total disability beyond 12/3/06.

AR 132. Defendant, relying on Dr. Heckman's recommendations, denied Plaintiff benefits. AR 135-136.

In maintaining that the MRI of January 26, 2007 did not show any evidence of new acute changes that would result in an ongoing period of total disability, Dr. Heckman appeared to rely on statements Dr. Mark Haas made in his interpretation of the MRI. AR 129-132. However, Dr. Heckman and Defendant improperly failed to offer any sort of reasoned explanation for disregarding information contained within that same document that tended to support Plaintiff's

5

claim of disability. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) ("Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence").

Within that document, Dr. Bradford Barker, who (unlike Dr. Heckman) had physically examined Plaintiff, made handwritten notes, which were submitted to Dr. Heckman and contained within the administrative record. AR 129. Dr. Barker further elaborated on those notes in a letter dated April 1, 2007 that Dr. Heckman also had in his possession when he reviewed Plaintiff's case. AR 78-88, 131. Dr. Barker, in describing Plaintiff's condition, determined:

> There is noted to be a synovial cyst at the L4-L5 level. The left L4 nerve root passes above the synovial cyst. The synovial cyst apparently is very close or appears to be attached to the transpedicle screw. There is very severe compression of the left L4 nerve root. At the L5-S1 disc, I note that a disc bulge presses on the right L5 root and the right S1 nerve root. The right L5 nerve root looked crushed. This last finding correlates well with the EMG finding of chronic right L5 radiculopathy [*see* AR 74-75].

AR 87. Dr. Barker ultimately concluded that "[t]he only reasonable chance for the patient to have any significant relief of his back pain and right leg pain is additional surgery to the lumbar spine." AR 88. In a letter subsequently sent to counsel for Plaintiff in April 2007 (a copy of which was provided to Dr. Heckman, *see* AR 131), Dr. Barker stated, "At the present time, I consider Mr. Kotyk to be totally and permanently disabled. He is not able to do any lifting of objects over five pounds and should avoid all repetitive lifting, bending, twisting, stooping, or standing. He needs to change positions frequently. He also needs to be on narcotic medication in order to relieve his pain." AR 89.

Dr. Heckman (the physician advisor) and Defendant failed to offer sufficient reasoning for discounting Dr. Barker's findings and concluding that there was no objective medical evidence of disability despite these findings. In relying on the MRI results sheet without

6

adequately addressing Dr. Barker's notations made within that sheet and Dr. Barker's subsequent discussion of those notations, *see* AR 78-89, Dr. Heckman and Defendant appeared to engage in the sort of "cherry-picking" that the case law cited above makes clear is impermissible. *See also Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 297 (6th Cir. 2005) (court concludes that denial of disability benefits was arbitrary and capricious based partly on fact that report of doctor, who did not physically examine Plaintiff but was engaged by defendant to review plaintiff's medical records, reached a determination contrary to the conclusions of doctors supporting Plaintiff's claims, "conclusions which [defendant's chosen reviewer] never addresses head-on and simply seemed to ignore"); *Kalish v. Liberty Mutual/Liberty Life Assurance Co. of Boston*, 419 F.3d 501, 510 (6th Cir. 2005) (court finds that "[a]lthough we are mindful of the general rule that when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious, we nevertheless conclude that [defendant] improperly denied the claim in the present case" based in part on failure of physician who evaluated plaintiff's file to "rebut the contrary medical conclusions reached by" doctor who regularly examined plaintiff and to "even mention" evidence that undermined its evaluator's diagnosis) (citation and internal quotation marks omitted).

    The Court further notes that Dr. Heckman made his findings regarding Plaintiff based on a file review[3] and rejected without sufficient reasoning the findings of Dr. Barker, who had physically examined Plaintiff.

    Moreover, *Defendant's own physician advisor* found that Dr. Pollak (who Defendant chose to examine Plaintiff and whose opinion Defendant followed) made findings containing

---

[3] The Court is aware that Dr. Heckman was not required to perform a physical evaluation of Plaintiff before making his findings.

7

inconsistencies and that Dr. Pollak did not have knowledge of additional testing that would be performed on Plaintiff when he made his findings. AR 132. Dr. Pollak's finding in his September 18, 2006 letter that Plaintiff "is not able to return for eight weeks" is also baffling, as Dr. Pollak concluded earlier in the letter, "It is not felt that Mr. Kotyk is able to return to his described job duties at this time and based on his progress, *I would not wish to venture a prognosis* as to exactly when he will be able to return to work." AR 19 (emphasis added).[4]

Defendant further failed to offer sufficient reasoning of how Dr. Pollak's finding that not only is Plaintiff not disabled but that he can return to work without any restrictions is supported by the record. Dr. Barker, who had examined Plaintiff, concluded that he has serious limitations regarding what work he can perform and that Plaintiff is totally and permanently disabled. AR 89. Dr. John Weise, who had been treating Plaintiff since 1995, concluded on February 21, 2007 in a letter provided to Dr. Heckman, "[I]t is my opinion, based on the results from [Plaintiff's] previous low back procedures that he is unable to work, and will have chronic pain in his low back that will not allow him to perform any kind of physical work." AR 77. Dr. Heckman and Defendant did not address these limitations in reaching the determination that Plaintiff is not disabled.

Furthermore, Dr. Heckman and Defendant's findings regarding additional evidence Plaintiff submitted during the administrative review process are problematic. After Plaintiff was denied benefits, he submitted additional evidence to Defendant: the Industrial Rehabilitation Functional Capacity Evaluation (hereinafter "FCE") that was performed on October 1, 2007. The FCE concludes:

---

[4] It is unclear how Dr. Pollak selected the amount of eight weeks; that selection was arbitrary.

> Based on objective findings, Mr. Kotyk demonstrated the ability to function between a sedentary and light (closer to sedentary) level of physical demands within a 3-hour time period. It is felt he would not tolerate a full workday at anything above a sedentary level of physical demands; and *it is questionable if a full workday would be tolerated at even that level*. Mr. Kotyk is reportedly very dependent on his pain medication, due to his constant level of pain. He may not be safe to perform job duties on such medications....

> *Mr. Kotyk did not demonstrate the ability to fulfill job demands*, such as frequent lifting, constant walking/standing, frequent squatting, frequent-constant climbing, constant bending/trunk rotation, frequent pushing/pulling, etc.

AR 140 (emphasis added). Dr. Heckman reviewed the FCE in November 2007 and declined to alter his earlier conclusion that Plaintiff is not disabled, as the FCE "is designed to measure Mr. Kotyk's ability at the current time and does not necessarily reflect the status in December of 2006. Therefore, my opinion of July 31, 2007 that there was no evidence of *ongoing* total disability beyond 12/3/06 is unchanged." AR 154 (emphasis added). Defendant subsequently issued a benefits denial letter to Plaintiff accepting Dr. Heckman's determination. AR 256-257.

The Court finds Dr. Heckman's conclusion puzzling. While he determined that the FCE does not provide proof of *ongoing* disability beyond December 3, 2006, the FCE does provide evidence of a disability after December 3, 2006 when it concludes, based on objective findings, that Plaintiff cannot meet job demands and that it is questionable if Plaintiff could even tolerate a full workday at a sedentary level. AR 140. It is true that the document does not indicate that Plaintiff was disabled in December 2006 or indicate whether Plaintiff was disabled for the entire period between December 2006 and October 2007. Thus, this evidence does not definitively establish that Plaintiff suffered from an ongoing disability (as defined by the Salaried Disability Plan) beyond December 3, 2006. However, contrary to Dr. Heckman's determination, this evidence does offer support for the conclusion that Plaintiff was disabled in the period after December 3, 2006.

9

Plaintiff also maintained during the administrative review process that Defendant's decision denying him disability benefits under the Salaried Disability Plan after December 4, 2006 was inconsistent with Defendant's decision to grant Plaintiff a disability retirement, effective November 1, 2006.  AR 51, 70.  In response, Plaintiff was told in an appeal denial that "although Mr. Kotyk was approved through Ford Motor Company's General Retirement Plan for a Disability Retirement effective November 1, 2006 [that] does not change the decision made by the Salaried Disability Plan."  AR 66-67.  Plaintiff's counsel was subsequently informed in a denial letter after further appealing the denial of benefits that:

> [t]he [Salaried Disability Appeals] Committee acknowledges that your client has been approved for Disability Retirement.  However, the Committee's scope of authority is limited to the disability program and evaluation of the facts that apply to your client's claim.  The plan provisions that govern the retirement plan are not the same as those defined in the Salary Disability Plan.  As a result the decisions made by the Retirement Board cannot be considered in conjunction with Salaried Disability Plan.

AR 135-136.

The Court recognizes that it is possible that the requirements of the retirement plan for establishing "disability" may differ from those set forth in the Salaried Disability Plan.  However, Defendant failed to offer any sort of reasoned explanation as to *how* those plans differ and *why* Defendant's finding that Plaintiff may retire based on a disability under the retirement plan is consistent with a finding that Plaintiff is not disabled and able to work without any specific restrictions under the Salaried Disability Plan.  Rather, Plaintiff was simply informed that the provisions of the two plans differ.[5]  The administrative record is void of any information

---

[5] Although the Court is unable to conclude that Plaintiff provided a copy of the retirement plan provisions to Defendant (under the plan term's, Plaintiff must provide proof of disability), Defendant was certainly aware of the provisions of that plan and easily could have offered an explanation of its denial of benefits beyond the conclusory assertion that the provisions of the

10

that would allow this Court to reach any conclusions regarding what the requirements of the retirement plan are, how disability is defined under that plan, and whether that definition differs from the definition in the Salaried Disability Plan in such a way that a plan administrator could reasonably determine that although an employee is disabled and eligible to retire under the terms of one plan, he is not disabled and able to work without any restrictions under the terms of the other.[6]

Taking the above into account, the Court finds that the denial of benefits was arbitrary and capricious. It was not the result of a deliberate, principled reasoning process that is supported by substantial evidence.

The Court must now make a determination as to whether to order that Plaintiff be awarded benefits or to remand this matter to the plan administrator for further proceedings. The Sixth Circuit has concluded that "where the problem is with the integrity of [the plan's] decision-making process, rather than that [a claimant] was denied benefits to which he was clearly entitled, the appropriate remedy generally is remand to the plan administrator." *Elliott*, 473 F.3d at 622 (citation and internal quotation marks omitted). However:

> Plan administrators should not be given two bites at the proverbial apple where

---

plans are different. Indeed, it was familiar enough with the plan's requirements to make a determination that its terms differed from those of the Salaried Disability Plan.

[6] The Court points out that Dr. Daniel DeGuzman, *plant physician for Defendant*, found on December 1, 2006 that under the terms of the retirement plan, Plaintiff "has been totally and permanently disabled... as of the last day worked." Plaintiff's Motion for Summary Judgment, Exhibit 3-I (emphasis added). Notably, three days later, Dr. Pollak, who examined Plaintiff at the request of Defendant, concluded that Plaintiff was not disabled and could "return to his previous job duties without specific restrictions." AR 36. Based on Dr. Pollak's evaluation, Plaintiff was denied benefits under the Salaried Disability Plan. AR 45-46. As noted above, Exhibit 3-I is not part of the administrative record and the Court, although noting its existence, does not consider it for purposes of determining whether the denial of benefits was arbitrary and capricious.

> the claimant is clearly entitled to disability benefits. They need to properly and fairly evaluate the claim the first time around; otherwise they take the risk of not getting a second chance, except in cases where the adequacy of claimant's proof is reasonably debatable.

*See Cooper v. Life Ins. Co. of North Am.*, 486 F.3d 157, 172 (6th Cir. 2007).

The Court concludes that remand is inappropriate, as Plaintiff is "clearly entitled" to benefits based on the medical evidence in the record. *See Cooper v. Life Ins. Co. of North Am.*, 486 F.3d at 169-170 (case remanded for entry of a benefits award after court finds defendant's denial of benefits was arbitrary and capricious based in part on defendant's file reviewer giving "no explanation for why he ignored... portions of the medical evidence in [plaintiff's] file" that supported plaintiff's claims and his failure to explain why the favorable medical evidence plaintiff offered was insufficient to establish her claim); *see also Spina*, 2011 U.S. Dist. LEXIS 26311 at *34-37 (court "finds that proof of [p]laintiff's disability is clear" and remands for entry of benefits award after concluding that denial of benefits was arbitrary and capricious based in part on plan administrator's "cherry-picking" of medical evidence). That medical evidence supports the existence of a disability beyond December 4, 2006.

Defendant does not contest that Plaintiff was disabled prior to December 4, 2006. As discussed above, Plaintiff submitted evidence of disability beyond December 4, 2006. Dr. Graziano, who performed surgery on Plaintiff, concluded on November 10, 2006 that Plaintiff's injury prevented him from working "indefinitely" and on November 16, 2006 that "[d]ue to Mr. Kotyk's continued pain, he remains disabled and cannot return to his occupation of Product Test Technician." AR 31, 73. Dr. Graziano did not place a limit on the length of Plaintiff's disability.

The only evidence Defendant offered in support of its claim that Plaintiff was not

disabled after December 4, 2006 was from Dr. Pollak and Dr. Heckman.  This evidence, as detailed at length above, is dubious.  Dr. Pollak's findings, as found by Defendant's own chosen physician advisor (Dr. Heckman), contained inconsistencies, were made without knowledge of further testing, and were offered after Dr. Pollak first concluded that he could not offer a prognosis as to when Plaintiff could return to work but then arbitrarily found two sentences later in his report that Plaintiff could not return to work for eight weeks.  Dr. Heckman's findings, made after file reviews, ignored the objective evidence in the record of a disability and opinions of Dr. Barker, who had examined Plaintiff.  Defendant failed to offer a reasonable basis for rejecting this evidence.  Dr. Heckman's findings also failed to acknowledge that the objective findings of the FCE supported Plaintiff's claim of disability.  Defendant further failed to demonstrate how the plan administrator could reasonably determine that although an employee is disabled and eligible to retire under the terms of the General Retirement Plan, he is not disabled and able to work without any restrictions under the terms of the Salaried Disability Plan.

This Court declines to give the plan administrator a second bite at the apple. Plaintiff offered evidence of a disability after December 4, 2006 and Defendant arbitrarily and capriciously denied benefits.  Defendant failed to offer objective evidence of its own indicating that Plaintiff did not suffer from a disability.  An award of benefits is warranted.

### III. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that the Magistrate Judge's Report and Recommendation [34] is hereby **REJECTED IN PART AND ADOPTED IN PART.**

**IT IS HEREBY ORDERED** that Defendant's Motion to Affirm Administrative Decision in ERISA-Governed Action [23] is **DENIED**.

13

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [22] is **GRANTED**. This matter is remanded to the plan administrator with instructions to award Plaintiff disability benefits retroactive to the date on which Plaintiff's benefits ceased.

**SO ORDERED**.

DATED: July 25, 2011

S/ARTHUR J. TARNOW
ARTHUR J. TARNOW
United States Senior District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 25, 2011, by electronic and/or ordinary mail.

s/Shawntel R. Jackson
Case Manager